[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION TO MODIFY CODED #161
The defendant has filed a motion to modify the existing alimony order coded #161.
The motion to modify alleges as follows:
1. On December 30, 1985. this Court (Hauser, J.) entered a Decree dissolving the marriage of the parties and ordering certain payments of alimony as provided in said judgment.
2. On September 10, 1990, (Gordon, J.) modified the language of the original order as to the defendant's alimony obligation to the plaintiff. CT Page 8936
3. Since the date of said order, there has been a substantial change in circumstances of the parties.
4. By reason of said substantial change in circumstances, the defendant is unable to make the alimony payments required by the judgment of the Court and believes that he is entitled modification of said Judgment reducing the alimony payments made.
Many of the facts that give rise to this motion are not in dispute. The dissolution decree of December 30, 1985 ordered the defendant to pay to the plaintiff $450.00 weekly alimony until her death or remarriage, and provided in part that "In addition, the defendant shall, under the same terms and conditions, pay 25% of the gross sum of any bonus or W-2 income earned by him up to an amount of $13,000.00 above that income listed on his financial affidavit filed with the court dated November 15, 1985. The defendant shall submit to the plaintiff verification of his yearly income no later than March first of the year subsequent of which he has earned the annual income referred to above, along with his W-2 forms and other documents proving his annual income for the year in question, together with a computation and payment of any sum to which the plaintiff is entitled for the year in question." At the hearing before the Honorable Elaine Gordon on September 10, 1990 the court entered the following orders and stating in part as follows:
 On the motion for Modification, Court finds that there has been no substantial change in circumstances. It is clear from the Memorandum of Decision taken together with the financial affidavit that Mrs. Smith would be going to work. The Court, though, does modify the Decree in the following manner. Paragraph six of Judge Hauser's decision shall now read, In addition, the Defendant shall under the same terms and conditions pay twenty five percent of the gross sum of any bonus, W2 income, of 1099 income, less reasonable expenses not to include depreciation earned by him." Perhaps, that will dispense with any further litigation.
This court has interpreted the orders of Judge Gordon as denying the motion for modification and as articulating that portion of Judge Hauser's decision previously referred to. Therefore, in determining whether there has been a substantial change in circumstances as alleged in the defendant's motion for modification this court is looking at the circumstances as they existed on the date of dissolution on December 30, 1985 and not CT Page 8937 as they existed on the date of the hearing before Judge Gordon on September 10, 1990.
The threshold question before the court is whether the defendant has proven that there has been a substantial change in circumstances. On the date of dissolution on December 30, 1985, the defendant had gross weekly income of $1,250.80 less deductions for estimated tax of $323.52, FICA $57.12, Pennsylvania State Income Tax $29.40, Pennsylvania State U.I. $1.25, and Pennsylvania Wage Tax $50.03 for a net weekly income of $789.48. He had motor vehicles with a net equity of $7,000.00 and a Picasso that was awarded to him with a total value of $6,000.00. He also had furnishings in storage with a value of $3,000.00 and a Union Trust Money Market account with a value of $45.00. He had a vested profit sharing with a net value after tax of $61,700.00 and an IRA of $8,500.00. He was to receive from the plaintiff $15,000.00 from the sale of the family home by December 31, 1990. He was ordered to contribute $5,000.00 towards the plaintiffs attorney's fees. He was also ordered to pay to the plaintiff $1,010.00 representing her share of a joint tax refund.
The total gross assets that the defendant had following the dissolution of marriage was $101,245 which included the $15,000.00 to be received from plaintiff. From that sum is deducted the $5,000.00 attorney's fees and the $1,010.00 joint tax refund leaving a net value of his assets as of the date of dissolution of $95,235. At the present time the total net value of all of his assets if $85,018.00. In 1993 the defendant had W-2 wages of approximately $72,000.00 plus cash from his pension of approximately $29,600.00. In 1994 he had W-2 wages of approximately $77,700.00. In 1995 he had W-2 wages of approximately $82,000.00 plus approximately $3,000.00 from stock options. In 1996 he had W-2 wages of approximately $95,000.00. In 1997 he had W-2 Wages of approximately $86,000.00 plus an additional approximate $8,000,00 from the exercise of stock options, plus an additional approximately $43,300.00 as a buyout of additional options which $43,300.00 is not part of his W-2 income. In 1998 he had consultant income of $2,800.00 plus a bonus of $5,000.00, social security income of approximately $15,000.00 and approximately $37,000.00 from his pension plan. He claims that he does not know the value of his current wife's stock portfolio and does not know if her earnings from that portfolio had gone into their joint checking account from 1995 to the present time. His current wife purchased an annuity in March of 1998 for $185,000.00 and contributes $252.00 weekly from that CT Page 8938 annuity to their joint checking account for her weekly contribution towards their weekly expenses of $1,461.00. No credible evidence was presented that the $252.00 weekly amount being contributed by the defendant's present wife to the total weekly expenses is reasonable.
From all of the evidence presented the court finds that the defendant has voluntarily reduced his estate and therefore does not find that there has been a substantial change in circumstances from the date of dissolution to the present time insofar as the value of his assets are concerned. The court further finds that the reduction of the defendant's net assets at the time of dissolution of $95,235 to his present net assets of $85,018 is not a substantial change in circumstances. Therefore, since the reduction of net assets of approximately $10,000 is not a substantial change in circumstances and the fact that that reduction is as a result of the defendant voluntarily reducing his estate, the court finds for each reason that that reduction in assets does not constitute a substantial change in circumstances from the date of dissolution to the present time.
The defendant retired at the end of December 1997. At that time he told his employer that he would need additional consulting income in order have sufficient income to live on and was told that there would be such consulting income made available to him. That consulting income has not been made available to him except for a relatively small amount. In discussing retirement insofar as it relates to a substantial change in circumstances the court in Misinonile v. Misinonile,35 Conn. App. 228, 232 cert. denied 231 Conn. 929 (1994) stated in part as follows:
 Our review of the record discloses no basis for a finding that the defendant retired for the purposes of avoiding or reducing his obligation. Rather, the defendant, who had been eligible for retirement six years earlier, chose, after working for thirty-three years with health problems, to retire at age sixty-eight. Under such circumstances, it is not unreasonable for the defendant, as he stated, to be "tired" and to seek the less strenuous and demanding lifestyle offered by retirement. The trial court chose to credit the defendant's testimony.
In this case, the court finds that there is no basis for a finding that the defendant retired for the purposes of avoiding CT Page 8939 or reducing his alimony obligation to the plaintiff. The defendant currently receives $305.77 weekly social security benefits. He also received $6,800.00 from his 401 K Plan in 1999. He anticipates that he will receive some consulting work in 1999 and has a lead on a consulting job writing software for approximately $5,000.00. There is no guarantee that he will receive those funds. The court therefore finds that there has been substantial change in circumstances from the date of dissolution to the present time as a result of the defendant's net weekly income being reduced from $789.48 to his social security weekly income of $305.77 plus his 401K income of $6,800.00.
Generally, once a substantial change in circumstance is found the same factors that are considered in determining alimony under46b-82 are considered in determining the amount of the modification.
At the present time the plaintiff has weekly social security income of $144.00. She started to receive social security in 1997. She also works part time for H R Block. In 1995 she had gross earnings from H R Block of $8,626.00. In 1996 she had gross earnings from H R Block from $6,977.00. In 1997 she had gross earnings from H R Block of $9,366.00. In 1998 she had gross earnings from H R Block of $7,545.00. She does not have any liabilities. She has net assets with a value of $307,926.00.
The present motion to modify was commenced by service by a sheriff on the plaintiff on April 20, 1998. The court therefore has the discretion as to whether to make any modification retroactive to that date.
The parties are also in dispute regarding the issue of an arrearage.
The parties are in agreement that as of May 11, 1999, there is an arrearage on the alimony of $1,800.00. There is a dispute regarding the additional percentage alimony. The dispute involves whether gross income is limited to gross taxable income. The pension funds and medical contributions that the defendant has received were not calculated by him in determining his percentage income. This court agrees with the plaintiffs calculation of the percentage income as shown on Exhibit A to her brief dated April 26, 1999 by including pension income and medical contributions and therefore finds that there is an additional $1,304.22 due CT Page 8940 from the defendant to the plaintiff.
The court enters the following orders:
 ORDERS: 1. Alimony is reduced from $450.00 weekly to $80.00 weekly. The amount of life insurance that the defendant is required to maintain for the plaintiff is reduced to $75,000.00.
 2. A reduction in alimony if effective the date this decision is filed.
 3. The issue of any additional arrearages that may have accumulated from May 11, 1999 to the date this decision is filed is reserved for hearing at a future date. The $3,104.73 arrearage found as of May 11, 1999 is to be paid at the rate of $16.00 per week. In the event the reduced alimony payment of $80.00 per week and/or the arrearage payment of $16.00 per week are not made timely then in either or both events the arrearage is to then include interest at the rate of 8% per annum.
 4. This court further orders that each party is allowed to gross $7,500.00 less federal and state taxes from outside employment over and above their social security without such amounts being grounds to modify the present order. The $7,500.00 also includes the calendar year 1999.
 5. The parties are ordered to exchange copies of their federal and state income tax returns within 15 days after such returns have been filed for so long as there is an outstanding alimony order or any arrearage thereto.
Axelrod, J.